647 P.2d 166

David Franklin GREEN, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF COCHISE, and The Honorable Lloyd C. Helm, Judge of the Superior Court, Division II, Respondents,

and

The STATE of Arizona, Real Party in Interest.

No. 15979–SA.

Supreme Court of Arizona, En Banc.

May 26, 1982.

William J. Redondo and Charles L. Weninger, Tucson, for petitioner.

Beverly A. Jenney, Cochise County Atty. by Patrick M. Elliston, Chief Deputy Atty., for respondents and real party in interest.

FELDMAN, Justice.

Petitioner brought this Special Action requesting this court to vacate an order made by the trial court on April 6, 1982. The effect of that order was to modify the terms of petitioner's probation to require him to spend an additional 175 days in the Cochise County Jail. We have jurisdiction pursuant to Rules 4 and 7 of the Rules Of Procedure for Special Action, 17A A.R.S. We accepted jurisdiction by order dated April 27, 1982, and now grant the relief sought by petitioner.

On December 16, 1980, the Cochise County Superior Court entered a judgment finding petitioner guilty of sexual abuse, a violation of A.R.S. § 13–1404(A). Imposition of sentence was suspended and petitioner

was placed on three years' probation. The court further ordered that petitioner:

[S]erve one year of jail time, to be served in the Benson jail facility on a hardship basis beginning December 17, 1980, and he is to be permitted to be released two hours prior to beginning a [work] shift and returning two hours after completing a shift; that he be allowed to work overtime hours as allowed by his employer who shall notify the jail of the change in the time situation.

In addition to other standard conditions of probation, petitioner was allowed to travel to Tucson for therapy sessions with a counselor. Green's probation was later modified to allow him to visit the family farm and assist his ailing wife with household chores. On or about December 29, 1980, petitioner requested and was orally granted a transfer to the Willcox jail, which was closer to his work and family residence.

On December 11, 1981 (approximately five days before the expiration of the one-year jail period), Green's probation officer, Mr. Akers, visited Willcox to talk to petitioner concerning his impending release and to secure the necessary court authorization. Green was neither at the jail, nor at work, nor at the counselor's office. The unexplained absence stirred Akers' curiosity. Upon subsequent examination of the daily log sheets at the Willcox jail, Akers discovered that petitioner had been absent from the jail without express permission of the probation officer on seven other occasions and on twelve other occasions had exceeded his two-hour report time after authorized release.

On December 23, 1981, the State filed a petition to revoke Green's probation on the ground that he had "failed to comply with the terms of hardship jail sentence as required in Condition No. 1" (the authorized release and reporting time requirements). The evidentiary hearing on this petition was held on January 7, 1982. The court *dismissed* the petition to revoke probation and ordered, on its own motion, a modification of probation and petitioner's incarceration until further notice. The next day,

petitioner filed a Petition for Special Action in the Court of Appeals, Division Two (2 CA-CIV 4295). On January 20, 1982, the court of appeals declined jurisdiction because it appeared to the court that "respondent judge ... will set a prompt hearing."

Petitioner remained in jail until January 27, 1982, at which time the State filed a petition to modify his probation. This petition requested the court:

> to require that [petitioner's] year in the county jail be served at a flat time rate without hardship release.... [And that petitioner] be given credit [only] for all the time actually spent in confinement as a condition of probation, which amounts to 166 days in the Willcox jail, and 19 days in the Benson jail.

The State evidently urged that because petitioner had spent time outside of the jail walls (in *authorized* as well as unauthorized release) during the full calendar year he had spent at the jails, he had not been actually confined for the number of 24-hour days equal to one year; thus, the State claimed, a modification of probation to require additional days of incarceration would not violate A.R.S. § 13-901(F).[1] The court agreed and determined that petitioner owed the State 175 full days of incarceration.[2] Accordingly, on April 6, 1982, the court ordered that petitioner's probation be modified to require him to spend another 175 days in jail, but without release of any kind. Petitioner then filed this Petition for Special Action pursuant to Rule 4(a), Rules of Procedure for Special Actions, 17A A.R.S.

■ The State claims that petitioner has a plain, speedy and adequate remedy by appeal. We disagree. No matter how much the appeal might be expedited, petitioner would have served at least a substantial part of the 175 days of jail time before disposition.[3] It was only by virtue of an interlocutory stay by this court that petitioner was released from jail pending determination of this Special Action, and it is only by virtue of the rather unique procedures provided for in our rules pertaining to special actions that matters such as this may be determined as expeditiously as is necessary here. See the notes of the State Bar Committee appended to Rules of Procedure for Special Actions, 17A A.R.S.

■ The State next claims that the Special Action should have been brought in the court of appeals rather than in this court. In most cases this would be correct. However, here petitioner already made one attempt to obtain relief from the court of appeals. While we might still refer the case to the court of appeals, under the unusual circumstances of this case we feel the interests of justice are better served by disposing of the matter without requiring petitioner to return to the court of appeals for a second time, with possible subsequent petition for review in this court. Direct filing in this court is exceptional, but is contemplated by Rule 4(a), *id.*

■ Turning now to the merits of this matter, we find the court below acted in excess of its legal authority. At the outset, we recognize the power of a sentencing court to modify probation for reasons that may not otherwise warrant revocation of probation. *See* A.R.S. § 13-901(C); Rule

---

1. The statute provides:
   > When granting probation the court may require that the defendant be imprisoned in the county jail at whatever time or intervals, consecutive or nonconsecutive, the court shall determine, within the period of probation, *as long as the period actually spent in confinement does not exceed one year* or the maximum period of imprisonment permitted under chapter 7 of this title, whichever is the shorter.

   A.R.S. § 13-901(F) (emphasis added).

2. Evidently this number was obtained by counting the total number of hours petitioner had spent outside the jail walls on authorized release and dividing by 24 to obtain the number of days which petitioner "owed" on his sentence of one year. Under this interpretation, a one-year sentence would mean 8,760 hours (365 days × 24 hours) inside the walls, so time spent outside the walls on *authorized* release would not count against the sentence.

3. Bail was set for petitioner's release pending appeal. When he filed the required bond, bail was raised and petitioner was again incarcerated.

27.2, Rules of Criminal Procedure, 17 A.R.S. As we have noted in the comment to Rule 27.2:

> This provision is included to protect the probationer from arbitrary conditions or regulations, to provide a formal means short of violation and revocation proceedings for the probationer to have ambiguous conditions or regulations clarified, to provide added flexibility to the probation process, see ABA Standards Relating to Probation § 3.3 (Approved Draft, 1970), and, on the suggestion of probation officials, to provide a means for invoking the authority of the court when the probationer seems to be slipping toward revocation without risking that ultimate sanction.

Nevertheless, the discretionary power given the sentencing court to impose, modify, or revoke probation is limited by several statutory provisions,[4] as well as constitutional due process considerations.[5] In the instant case, the court's authority to order petitioner to serve time in the county jail as a condition of probation was expressly limited by the statutory proviso that the period petitioner would actually spend in confinement could not exceed one year. *See* A.R.S. § 13–901(F), note 1, *supra.* We disagree with the lower court's apparent determination that in computing the "period" petitioner "actually spent in confinement" the hours spent outside the jail walls in *authorized release* are not to be counted. The original order of probation expressly allowed petitioner to spend part of his jail time outside the prison walls in lawful, authorized activities. While petitioner was "out" on authorized release, he was in full compliance with the orders and regulations of the court, prison, and probation authorities. Therefore, time petitioner spent in the lawful pursuit of activities he was expressly authorized to conduct outside the jail (to which he was required to return at a specified time each day) was part of the "period actually spent in confinement" for purposes of A.R.S. § 13–901(F).

This interpretation of the statute is consistent with both the language used in this statute and general legislative intent expressed in analogous statutes. For instance, A.R.S. § 13–903(C) provides:

> The running of the period of probation shall cease during the unauthorized absence of the defendant from the jurisdiction or from any required supervision and shall resume only upon the defendant's voluntary or involuntary return to the probation service.

If, as this section provides, an *authorized* absence from the jurisdiction or from any required supervision does not toll the running of the "period" of probation, an *authorized* absence from jail should not toll the running of the "period" of confinement imposed as a condition of probation.

A.R.S. § 31–332, which applies to persons who are sentenced rather than placed on probation, gives the governing body of a county authority to establish a work furlough program. A.R.S. § 31–333 provides as follows:

> A. A court may direct that a prisoner in a detention facility continue his regular employment or obtain new employment during his period of incarceration and specify appropriate terms and conditions.
>
> B. Whenever the prisoner is not actually working at his employment he shall be confined in the detention facility, unless the court otherwise directs upon recommendation of the work furlough administrator.

In addition, A.R.S. § 31–335 provides that prisoners released on work furlough "shall be eligible for time credits while on work furlough," if otherwise eligible for such credits. A.R.S. § 31–334 directs that the earnings of the prisoner on work furlough be used for his support and

---

**4.** *See* A.R.S. §§ 13–901 to –903; Rule 27, Rules of Criminal Procedure, 17 A.R.S.

**5.** *See, e.g., Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *State v.*

*Rivera,* 116 Ariz. 449, 569 P.2d 1347 (1977); *State v. Jameson,* 112 Ariz. 315, 541 P.2d 912 (1975).

for payment toward the support of his dependents, as well as for any restitution ordered by the court. It appears clear, therefore, that the legislative purpose in establishing such programs and granting courts permission to provide for work release was to permit certain prisoners to retain their employment and to fulfill their obligations to support themselves and their families. It obviously was not the legislative intent that a prisoner who had not given grounds for revocation but who had incurred the displeasure of the work furlough administrator or probation officer would lose his eligibility for the "time" credits referred to in A.R.S. § 31–335, nor can we find any legislative intent that the time imprisoned probationers spend on authorized release should not apply toward the period of confinement specified in the order of probation. The legislative intent seems to be to the contrary.

In summary, if petitioner did violate the conditions of probation, his probation could have been revoked pursuant to A.R.S. § 13–901(C). Even though the State failed to obtain revocation of petitioner's probation, it was nevertheless still free to seek modification of the conditions of probation. *See id*; Rule 27.2, Arizona Rules of Criminal Procedure, 17 A.R.S. However, the modification here attempted was impermissible because it would have resulted in petitioner's actual confinement for a period in excess of one year, a result expressly prohibited by A.R.S. § 13–901(F).

We hold, therefore, that the proper interpretation of A.R.S. § 13–901(F) is that all time spent on authorized release is part of the "period actually spent in confinement" and is to be applied against both that imprisonment permitted by the statute as a condition of probation and the maximum period of confinement set by that statute.[6]

Therefore, petitioner is entitled to credit for all the time spent in actual confinement

(which includes time spent on authorized release) and for the time he was incarcerated after December 16, 1981 (the expiration date of the calendar year of jail time). Although petitioner is not entitled to credit for the time he spent outside the jail without authorization, it is clear that petitioner owes no additional jail time. The State alleges 19 different times in which petitioner was unlawfully outside the jail. Even if we assume that he was in unauthorized release for 19 full days, he had spent much more than those 19 days in jail at the time we issued a stay order in this special action.

The order to modify probation is vacated and the matter is remanded to the Superior Court with instructions to proceed in accordance with this opinion for the remainder of the probation period.

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and CAMERON, JJ., concur.

---

6. Petitioner was not ordered to spend nonconsecutive jail time. Therefore, we need not here decide whether a sentence to non-consecutive jail time extending over a calendar year (*e.g.*, weekends in jail, weekdays at home and work for a period of two years or a total time in jail of 104 days) would violate the provision of A.R.S. § 13–901, which prohibits a "period actually spent in confinement" in excess of one year.