**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Robert ROLLAG, Defendant and Appellant.**

**No. 15298.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1986.

Decided Jan. 28, 1987.

Frank Geaghan, Asst. Atty. Gen., Pierre; Mark V. Meierhenry, Atty. Gen., Pierre, on brief, for plaintiff and appellee.

Graig B. Sewell, Sioux Falls, for defendant and appellant.

SABERS, Justice.

This appeal arises from the trial court's order requiring appellant to serve the remainder of his one year sentence without credit for time released on work furlough. We reverse.

*Facts*

On February 1, 1985, appellant Robert Rollag (Rollag), pled guilty to the charge of simple assault, a violation of SDCL 22-18-1(2). Rollag was sentenced to serve one (1) year in the Minnehaha County Jail commencing February 11, 1985. Rollag was authorized for counseling as well as work release at John Morrell & Company. He was further ordered to participate in the Family Violence Task Force Program. Rollag entered the jail and began his sentence on February 11, 1985.

On March 20, 1985, Rollag moved for an order suspending execution of the remainder of his sentence. This motion was denied. Rollag made a similar motion on May 3, 1985. A hearing was held on this motion on May 17, 1985 and the trial court entered an order on May 24, 1985, placing Rollag on furlough from the jail for the

---

period of May 17, 1985 to September 3, 1985. The order was based on economic hardship. The policies and regulations of the jail did not allow an inmate additional time to perform a second job. Rollag was experiencing a substantial economic loss due to his inability to conduct his horse breeding business. The furlough enabled Rollag to conduct his horse breeding business during the evening hours at his home after completing his day shift at the plant under the work release program.

Pursuant to motions, the trial court extended Rollag's work furlough until October 3, 1985, or until the strike ended at the John Morrell plant, and further extended his work furlough for another thirty (30) days or until such strike terminated. These orders were entered by a different judge due to the trial court judge's absence due to illness.

On November 22, 1985, Rollag moved for suspension of sentence and probation. On December 2, 1985, the trial court ordered Rollag to remain on work furlough until January 2, 1986, at which time he would be released for work at the plant and for his court ordered attendance at the domestic violence class. On January 2, 1986, Rollag returned to the jail as required by the court's order.

On February 11, 1986, Rollag requested that he be released from the jail, which request was denied. By the trial court's order filed that same day, Rollag was ordered to commence serving the balance of his one year sentence as of January 2, 1986, and was denied credit for time released on furlough. This order was entered without notice to Rollag, his counsel, nor with a hearing. Rollag is on a personal recognizance bond pending this appeal.

### Rollag's Claims

Rollag claims that for all practical purposes his release on work furlough was identical to his release for the prison work program because (1) the court placed certain conditions upon the furlough, and (2) he would have been held accountable for escape while on furlough. He further claims that the trial court lacked jurisdiction in extending his sentence in excess of the one year originally imposed. Finally, Rollag claims that the court's order entered without notice or a hearing violated his due process rights.

### 1. ROLLAG WAS ENTITLED TO CREDIT FOR TIME RELEASED ON WORK FURLOUGH

The May 17, 1985 hearing on Rollag's motion to suspend the remainder of his sentence resulted in the court granting him a furlough. The court did not indicate that Rollag would not receive credit for time released on furlough. Furthermore, the court did not state that it was suspending imposition or execution of the sentence; nor did it state that it was staying the execution of Rollag's sentence. These are merely conclusions advanced by the State. Any doubts as to the trial court's intention must be resolved in favor of Rollag.

Following this hearing, the court also ordered that no additional motions for suspension of sentence would be heard for at least thirty days after September 3, 1985. Therefore, this order does not suggest that the trial court suspended execution of Rollag's sentence as argued by the State.

Subsequent orders of the trial court extended Rollag's furlough until January 2, 1986, each of which were denominated "work furlough." The State has made no attempt to define this term. A search of the South Dakota Code similarly fails to provide a definition of "work furlough." [1]

The Supreme Court of Arizona provides guidance in defining the term "work furlough" in *Green v. Superior Court*, 647 P.2d 166 (Ariz.1982). In discussing the defendant's authorized work release while on probation, the court noted that analogous

---

**1.** However, under the chapter dealing with paroles from the penitentiary, SDCL 24–15–8.2 provides for notification to the victim of an inmate's release, *furlough,* or work release.

statutes[2] provided for work furlough for prisoners in Rollag's situation who are sentenced rather than placed on probation. *Id.* at 169. In regard to the work furlough statutes, the court stated:

A. A court may direct that a prisoner in a detention facility continue his regular employment or obtain new employment during his period of incarceration and specify appropriate terms and conditions.

B. Whenever the prisoner is not actually working at his employment he shall be confined in the detention facility, unless the court otherwise directs upon recommendation of the work furlough administrator.

In addition, [the statute] provides that prisoners released on work furlough 'shall be eligible for time credits while on work furlough,' if otherwise eligible for such credits. [The statute] directs that the earnings of the prisoner on work furlough be used for his support and for payment toward the support of his dependents, as well as for any restitution ordered by the court. It appears clear, therefore, that the legislative purpose in establishing such programs and granting courts permission to provide for work release was to permit certain prisoners to retain their employment and to fulfill their obligations to support themselves and their families.

*Id.* at 169–170.

Rollag's work furlough enabled him to fulfill his family obligations. Rollag's debts were substantial and the income from the horse breeding business was crucial to the family's economic well being. The evidence further showed that Rollag's wife was unable to handle the horse business by herself. Rollag's work furlough was on condition that he: (1) abstain from alcohol, (2) remain on good behavior, (3) obtain counseling, and (4) stay away from the victim (of the simple assault). Rollag fulfilled all of these conditions.

In *Green*, the defendant was ordered to serve one year in the county jail, placed on three years probation, and allowed authorized work release. *Id.* at 167. In addition to other standard conditions of probation, the defendant was permitted to travel to Tucson for therapy sessions. The defendant's probation was later modified to permit him to visit the family farm and assist his ailing wife with household chores. He was later granted a transfer to another jail which was closer to his work and family residence. *Id.* However, the trial court subsequently granted the state's petition to modify probation, in which it was determined that the defendant should be given credit for only that time actually spent in confinement and not for such authorized and unauthorized time spent outside the jail walls. *Id.* at 168.

In vacating this order, the appellate court stated that the original order of probation expressly allowed the defendant to spend part of his jail time outside the jail in lawful, authorized activities and, inasmuch as he was in full compliance with the conditions of the work-release program, such authorized time was properly included in computing the "period actually spent in confinement" as mandated by statute. *Id.* at 169. The court held that the defendant, although not entitled to credit for unauthorized time spent outside of jail, was entitled to full credit for all time spent in actual confinement, which included authorized release time, and for the time he was incarcerated after the expiration of the one year term. *Id.* at 170.

Rollag's release on work furlough was authorized by the trial court; his leave from jail to breed horses was permissive. A fair reading of the hearing transcript suggests that the court expanded Rollag's work release privileges to include this activity. As mentioned in *Green*, prisoners on the work furlough program receive "time credits" pursuant to statute. *Id.* at 169. Although we have no comparable statutory scheme, South Dakota's work release programs are governed by the provisions found in SDCL ch. 24–8 which sim-

2. *See:* Ariz.Rev.Stat.Ann. §§ 31–331 to –336 (inclusive) (1976).

ilarly contemplate credit for time served on work release.

In *State v. Kiggins,* 86 S.D. 612, 200 N.W.2d 243 (1972), we affirmed a conviction of escape based on the defendant's failure to return from a work-release program. We wrote:

> Defendant was lawfully confined in the Minnehaha County jail. The privilege of work-release merely extended the limits of his confinement. Until his discharge by due process of law he remained under the legal restraint of his sentence and in constructive custody of the jail. His wilful abscondment from restraint and custody constituted an escape. (citations omitted)

*Id.* 86 S.D. at 615, 200 N.W.2d at 244.

Similarly, the court in *People v. Haskins,* 177 Cal.App.2d 84, 2 Cal.Rptr. 34 (1960), held that a prisoner who did not report back to the prison from work furlough was guilty of escape within the meaning of the statute prohibiting escape from the custody of an officer or other person who had legal custody of him. *Id.* 2 Cal.Rptr. at 37. The court stated that a prisoner on a work furlough was, in contemplation of the law, as much within the custody of the sheriff when he left the jail to go on furlough as when he was confined within the jail's limits. *Id.* at 36. *See also:* 76 A.L.R.3d § 6, at 670 (1977) and cases cited therein.

Based on the foregoing authorities, we hold that Rollag was entitled to credit for time released on work furlough under the facts of this case. If the trial court did not intend Rollag to receive such credit, the court should have explicitly advised him thereof on the record. Having failed to do so, we cannot accept the State's interpretation of what the trial court's "intention" was at the time it ordered the work furlough. Any ambiguities in the trial court proceedings must be construed in favor of Rollag.

In view of this decision, we do not reach the remaining issues raised on appeal.

Accordingly, we reverse the trial court and order that credit be given for time released on work furlough.

WUEST, C.J., MORGAN, J., and FOSHEIM, Retired Justice, concur.

HENDERSON, J., concurs in result.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.