Rudy Paul ONE, Appellant,

v.

STATE of Alaska, Appellee.

No. 4011.

Supreme Court of Alaska.

March 30, 1979.

Allan D. Beiswenger, James H. Plasman, Asst. Public Defender, Bethel, Brian C. Shortell, Public Defender, Anchorage, for appellant.

Victor C. Krumm, Dist. Atty., and Julia Swan, Legal Intern, Bethel, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

While serving a sentence for rape and awaiting trial on an assault with a dangerous weapon charge, Rudy Paul One escaped from the Bethel City Jail. One entered a guilty plea to the charge of felony escape, AS 11.30.090(b).[1] The Superior court, Judge Christopher Cooke presiding, imposed the maximum sentence of five years imprisonment to run consecutively to One's previous sentences.[2] One has appealed the sen-

---

1. AS 11.30.090 provides in full:
   Escape. (a) A person commits an escape if without lawful authority he
   (1) wilfully removes himself from official detention; or
   (2) commits an unlawful evasion under § 93 of this chapter and leaves or attempts to leave the state.

   (b) An offense charged under (a) of this section is punishable as an escape in the first degree if
   (1) the official detention is on a charge of a felony;
   (2) the official detention is for extradition; or
   (3) the person, during the escape or at any time before his being restored to official detention, has in his possession a deadly weapon.
   (c) An attempt to escape under (a)(1) of this section which under (b)(1), (2) or (3) of this

section is an escape in the first degree is punishable as an escape in the second degree.
   (d) Any other escape or attempted escape is punishable as an escape in the third degree.

2. AS 11.30.095 provides the penalties for escape:
   Penalties for escape and unlawful evasion.
   (a) A person convicted of escape in the first degree is punishable by imprisonment for not less than one year nor more than five years.
   (b) A person who is convicted of escape in the second degree is punishable by imprisonment for not less than six months nor more than two years.
   (c) A person who is convicted of escape in the third degree is punishable by imprisonment for not less than three months nor more than one year.
   (d) A person who is convicted of unlawful evasion in the first degree is punishable by

tence pursuant to AS 12.55.120 [3] on the ground that it is excessive.

Our task is to determine whether the superior court was "clearly mistaken" in imposing the sanction that it did. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). We have stated that a maximum sentence should not be imposed without some basis for characterizing a defendant as the worst type of offender. *Donlun v. State*, 527 P.2d 472, 474–75 (Alaska 1974); *Galaktionoff v. State*, 486 P.2d 919, 924 (Alaska 1971); *Waters v. State*, 483 P.2d 199, 201 (Alaska 1971). One argues that the facts of his escape do not merit his classification as the "worst type of offender."

One characterizes his escape as "little more than a camping trip." The escape began shortly after midnight on September 24, 1977, when One and Robert Mark walked away from the Bethel City Jail

through an unlocked door. The two escapees took a boat from a fish camp and a gun from another fish camp. They had motor trouble along the way which resulted in their taking a second boat. As they proceeded upriver, they continued to have trouble and took still more boats and motors, sometimes leaving the owners stranded. On October 5, 1977, while on the Kuskokwim River, One and Mark called to a passing boat and informed the operator that they were the pair who had escaped from the Bethel Jail. They asked the operator to notify the state troopers of their location. The troopers were notified and One and Mark were arrested at the village of Upper Kalskag on October 8, 1977.

Because of the conduct of One and his companion while free, we cannot agree with his characterization of the escape as a mere camping trip. Nor can we agree that Judge Cooke's conclusion was "clearly mis-

imprisonment for not less than three months nor more than one year.

(e) A person who is convicted of unlawful evasion in the second degree is punishable by imprisonment for not less than 30 days nor more than one year.

(f) Under this section suspensions of imposition or execution of sentence or granting of parole shall be governed by the following considerations:

(1) when satisfied that the ends of justice and the best interests of the public as well as the defendant will be served, the court may suspend the imposition or execution of a portion of the sentence greater than the minimum sentence authorized under this section, and place the defendant on probation.

(2) execution of sentence may not be suspended nor may probation or parole be granted until the minimum imprisonment provided under this section has been served, nor may imposition of sentence be suspended, except upon the condition that the defendant be imprisoned for no less than the minimum period provided under this section, nor may the minimum penalty provided for in this section be reduced under AS 11.05.150, except upon a finding by the court that the escape or evasion was for the purpose of avoiding a clear and present danger of physical abuse or cruel and unusual conditions caused either wilfully or by neglect.

(g) Terms of imprisonment required under this section are consecutive to sentences then existing or which may be imposed pursuant to the official detention from which the person has escaped.

(h) When an offender has escaped or has committed an unlawful evasion and voluntarily surrenders himself to a peace officer or employee of the division of corrections, under circumstances when there is no imminent likelihood of his being apprehended, (f)(2) of this section is inapplicable.

(i) If the sentencing court finds that imposition of the minimum term, as provided in this section, (1) would result in a clear and manifest injustice to the accused, and (2) would not substantially further public protection, the court shall make written findings in the matter and cause these findings to be certified to the presiding judge or, if he himself is the presiding judge, to the administrative director of courts. The presiding judge or administrative director of courts shall forthwith constitute a panel consisting of three judges of appropriate jurisdiction to hear the matter. Sentencing in such case shall be imposed only by a majority of the three-judge court after consideration of all pertinent files, records, and transcripts, including the findings and conclusions of the judge who originally heard the matter. The three-judge court may, in its discretion, hear oral testimony. The three-judge court may, in the interest of justice, sentence the defendant to less than the minimum provided for in this section.

3. AS 12.55.120 provides in part that a "sentence of imprisonment lawfully imposed by the superior court for a term or for aggregate terms exceeding one year may be appealed to the supreme court by the defendant on the ground that the sentence is excessive."

taken." In terms of Alaska's sentencing principles,[4] One had shown himself to be a significant threat to the public and a poor rehabilitation prospect. One's criminal record illustrates a history of violence and alcohol abuse, including five misdemeanor assault and battery convictions, two possession of a firearm while intoxicated convictions, and two disorderly conduct convictions. At one time One had been placed in an alcohol rehabilitation program in the Juneau Correctional Center but he apparently lacked the interest to complete the course. At the time of sentencing, One had been convicted of two felonies, rape and assault with a dangerous weapon.

Judge Cooke's thoughtful analysis of the escape in his sentencing remarks indicates, we believe, that he was fully cognizant of the goals of sentencing and that he carefully weighed One's right to rehabilitative treatment against the community's need for protection. Particularly noteworthy is Judge Cooke's application of the vulnerability of persons living in rural Alaska to conduct such as that engaged in by One and his companion. Judge Cooke stated:

[P]eople have a lot of property in those fish camps and they aren't very secure, and they aren't around to protect them and look after them because they move about from place to place in the area with the changing seasons, so that they're easy pickings for people who are on the lam like Mr. One was. And so a person who escapes and, you know, he's inclined to take other people's property, endanger people, put them in fear for their personal well-being and that of their families and the security of their property, wherever it may be located. And they don't have the assurance that people in the more developed areas and communities might have that they can secure some protection by picking up the phone and calling a police officer from a nearby police station who can quickly get over to that area in a car. People are simply much more on their own and simply don't have that kind of security, particularly in the remote camps and in the small villages. And so in this context, I think, that an escape is to be viewed clearly seriously, and this particular type of escape which does involve the sort of conduct that I've related, taking boats, taking motors, taking guns, taking food, breaking into camps, summer homes—not summer homes, summer warehouses and smokehouses and that sort of thing, traveling through a sparsely populated area by people who are not really able to deal with the situation presented by a couple of escaped felons, must be viewed very seriously, even though, fortunately, no damage—no harm was done to any persons in the course of this escape, no injuries—no violence to any person, no injuries inflicted upon any people. So I think this must be considered as a very serious offense against the public, and that also Mr. One's extensive prior record, considering the fact that he was in custody having been convicted of 2 felony offenses at the time that he escaped, must be taken into account and rank him among the worst type of offenders. In this context and considering the provisions of. 11.30.095 which deals with the penalties for escape, and this is escape in the first degree, that the significant factors to be considered at sentencing are the need to isolate the defendant from the public, to protect the public, the need to deter others from similar conduct, particularly where escape is easy from a less secure institution like exists in Bethel, to reaffirm community standards and, hopefully, in the future to deter Mr. One from such similar conduct. For all of these reasons I feel that the indication is that a lengthy sentence is warranted and, in fact, that the maximum sentence is warranted, and any offsetting consideration that might be given to prospects of rehabilitation and Mr. One making a success for himself I think are simply not present in this case. There hasn't been any appreciable testimony along this line. And one cannot help but feel sorry for Mr.

---

4. *See State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

One who at age 30 has nothing to look forward to except many, many years in jail, no marketable skills and no family or dependents on the outside. On the other hand, that doesn't excuse what he's done, or there's nothing really in the whole picture here to indicate that there's any reason to suspect that the situation is going to appreciably improve, and that there's any reason to trust him with a lesser sentence or with a probationary status. For those reasons I'm going to follow the recommendations here that a sentence of 5 years be imposed, and judgment and commitment will be entered to that effect.

Given the entire record and the goals of sentencing announced by this court in *State v. Chaney,* 477 P.2d 441 (Alaska 1970), we are unable to say that Judge Cooke was "clearly mistaken" in imposing the maximum penalty. We therefore defer to his judgment and AFFIRM the sentence.