Joseph A. MATTHEW, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9395.

Court of Appeals of Alaska.

Feb. 2, 2007.

William R. Satterberg, Jr., Fairbanks, for the Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### *OPINION*

COATS, Chief Judge.

Joseph A. Matthew pleaded no contest to one count of felony driving while under the influence. Following his sentencing, Matthew asked the superior court to delay his confinement so he could work in Barrow. Matthew proposed a plan where he would be subject to electronic monitoring. The electronic monitoring would ensure that Matthew would be at his residence, at work, or commuting between his residence and work. In addition it would monitor Matthew to ensure that he did not consume alcohol. Superior

Court Judge Randy M. Olsen granted Matthew's motion and ordered the release. Even though Judge Olsen informed Matthew that Matthew would not be able to receive credit for time served for the time he was on electronic monitoring, Matthew indicated that he would file a motion to obtain credit towards his sentence for the time he was subject to electronic monitoring.

Matthew filed the motion seeking credit for the time he spent on electronic monitoring before he turned himself over to the custody of the Department of Corrections. Judge Olsen summarily denied the motion. Matthew now appeals, arguing that Judge Olsen erred in refusing to give him credit for the time he was subject to electronic monitoring. This case is governed by *Nygren v. State*,[1] where we held that whether a person is entitled to credit for time served while released on bail or probation is determined by whether the "person released on bail or probation is subjected to restrictions approximating those experienced by one who is incarcerated."[2] We conclude that the restrictions to which Matthew was subjected did not meet this standard. We accordingly affirm Judge Olsen's order denying Matthew credit for time served for the time he was subject to electronic monitoring.

*Factual and procedural background*

Matthew was charged with one count each of felony driving while under the influence, felony refusal to submit to a chemical test, driving with a suspended driver's license, and failure to stop at the direction of a peace officer.[3] At an omnibus hearing before Judge Olsen on March 31, 2005, Matthew asked for a bail hearing to be conducted the following week. Matthew indicated that the case would probably be resolved by a plea agreement. Matthew also told Judge Olsen that he was going to ask to be released on electronic monitoring so that he would not need to be in the third party custody of his mother and father.

At the bail hearing on April 5, Matthew entered into a plea agreement with the State which included his plea to felony driving while under the influence and a 2–year sentence of incarceration. Matthew asked Judge Olsen to delay the date when he would be required to turn himself in to serve his sentence of imprisonment. Matthew asked for a sixty-day extension in order to work in Barrow. Matthew's proposal was that he would be monitored by a private electronic monitoring system, SCRAM, which is operated in Alaska by a private company, Alaska Monitoring Services. SCRAM stands for "secure continuous remote alcohol monitoring." The SCRAM unit is a small ankle bracelet that detects a subject's alcohol consumption through the skin pores. In addition, through an attached global positioning system, the unit allows the subject's location to be closely monitored at all times.[4]

Judge Olsen granted Matthew the sixty-day stay of imprisonment. He specifically ordered Matthew confined to home, work, and travel thereto and back, and that he was not to consume alcohol while on release. He warned Matthew that any violations of this condition would be reported to the court. Judge Olsen also told Matthew that he would not receive any credit toward his sentence for the time he was released on electronic monitoring. Matthew informed Judge Olsen that he would like to make a later motion to obtain credit for time served while he was released on electronic monitoring. Judge Olsen indicated that he would consider the motion.

Pursuant to the plea bargain with the State, Judge Olsen sentenced Matthew to 2 years of imprisonment, a $10,000 fine, a permanent revocation of his driver's license, forfeiture of his vehicle, and he extended Matthew's probation in another case by 2 years. Judge Olsen gave Matthew credit for the 30–day period he spent in residential treatment

1. 658 P.2d 141 (Alaska App.1983).

2. *Id.* at 146 (citation omitted).

3. AS 28.35.030(n); AS 28.35.032(p); AS 28.15.291(a)(1); AS 28.35.182(b), respectively.

4. *See* Alcohol Monitoring Systems, Inc., *Components of the SCRAM System*, at http://www.alcoholmonitoring.com/products/html (Last visited Jan. 12, 2006).

at Lakeside–Milam Recovery Center in Kirkland, Washington.

At a bail hearing on May 16, 2005, Matthew again requested a delay of his imprisonment so that he could continue working in Barrow and other locations throughout the construction season. Judge Olsen agreed to this extension. Judge Olsen observed that when Matthew was not intoxicated and was not driving in violation of the law, he was a productive member of society. Judge Olsen warned Matthew that if he consumed alcohol or if the electronic monitoring agency decided it was unwilling to continue to supervise him, he would be arrested. Judge Olsen stated that he understood that, under the SCRAM program, Matthew would only be allowed to be at work, at home, or commuting between home and work. He told Matthew that the electronic monitoring system was very accurate and that the attached GPS unit would show where he was at any given moment. He stated that other people who had been released on this electronic monitoring program had faced a bail revocation after they had departed from their approved schedule to run an errand.

On June 7, Matthew filed a motion to obtain credit toward his sentence of incarceration for the time that he spent while released on electronic monitoring. Judge Olsen denied the motion. Matthew appeals from this decision. We affirm.

*Why we conclude that Matthew was not entitled to credit toward his sentence of imprisonment for the period of time he was subject to electronic monitoring*

By statute, a defendant is to receive "credit for time spent in custody pending trial, sentencing, or appeal, if the detention was in connection with the offense for which the sentence was imposed." [5] In the leading case of *Lock v. State*,[6] the Alaska Supreme Court

interpreted Alaska's former credit for time served statute,[7] and held that "upon revocation of probation, one is entitled to credit against his sentence on the original offense for time spent as a condition of probation, in a rehabilitation program which imposes *substantial restrictions on one's freedom of movement and behavior*." [8]

In *Nygren*, this court set out to define what constituted "substantial restrictions on one's freedom of movement and behavior" which would qualify for credit for time served under AS 12.55.025(c).[9] We stated that the test was the "extent to which a person released on bail or probation is subjected to restrictions approximating those experienced by one who is incarcerated." [10] We recognized that places of incarceration varied substantially. But we attempted to define the types of restrictions that characterize such facilities:

> [I]ncarcerative facilities share a number of common characteristics: their residents are invariably sent there by court order; the facilities require residency, and residency requirements are sufficiently stringent to involve a definite element of confinement; residents of the facilities are subject to twenty-four hour physical custody or supervision; any periods during which residents may be permitted to leave the facility are expressly limited, both as to time and purpose; while in the facility, residents are under a continuing duty to conform their conduct to institutional rules and to obey orders of persons who have immediate custody over them; and residents are subject to sanctions if they violate institutional rules or orders and to arrest if they leave the facility without permission.[11]

While we indicated that the list was not complete, we stated that the list was "sufficient to serve as sound points of reference

**5.** AS 12.55.025(c).

**6.** 609 P.2d 539 (Alaska 1980).

**7.** AS 11.05.040(a). In 1978, the Legislature enacted current AS 12.55.025(c), which superseded former AS 11.05.040, but contained the same provision for good time credit. *See State v. Fortuny*, 42 P.3d 1147, 1148 n. 2 (Alaska App.2002).

**8.** *Lock*, 609 P.2d at 545 (emphasis added).

**9.** *Nygren*, 658 P.2d at 146.

**10.** *Id.* (citation omitted).

**11.** *Id.*

for determining, in any given case, whether 'substantial restrictions on one's freedom of movement and behavior' have been imposed, so as to require credit for time served under *Lock.*" [12]

■ The first question that we must decide is the appropriate standard of review. We must either review *de novo*, to determine as a matter of law if a defendant's conditions of release were substantial restrictions constituting incarceration or we must review for an abuse of discretion, and defer to the trial court, unless we find an abuse of discretion. A review of our prior case law shows that we have used both standards.[13] Upon further consideration, it seems clear to us that this is an issue which we must determine as a matter of law. Of course, the trial court must determine factually the conditions of release. But we must review, *de novo*, whether these conditions of release sufficiently approximate incarceration. We arrive at this conclusion for two main reasons. First, this appears to be the standard which the Alaska Supreme Court applied in *Lock.*[14] We are bound to follow this precedent. The second reason is to establish sentencing uniformity. If we deferred to the trial courts, similarly situated defendants would be treated differently. Whether a prisoner would receive credit for time served might turn on the identity of the judge before whom he appeared. This court, by setting uniform statewide standards, can strive to eliminate unjustified disparity.

■ The State argues that Matthew does not qualify, as a matter of law, for credit for the time that he served on electronic monitoring under AS 12.55.025(c). The State points out that the statute provides that a defendant "shall receive credit for time spent in custody pending trial, sentencing, or appeal." The State argues that because Matthew was released after sentencing but before beginning his sentence, and not on bail pending appeal, the statute does not apply to him. But we conclude that we do not need to decide this issue because we hold that Matthew has not established that he was "subjected to restrictions approximating those experienced by one who is incarcerated." [15]

The record sets out the restrictions which Judge Olsen placed on Matthew. Matthew was to be at his residence, at his work, or directly commuting between those two places. He was not to consume any alcohol and was constantly monitored both as to his movements and his alcohol consumption by the electronic monitoring. We conclude that Matthew's court-ordered conditions of release did not subject him to "restrictions approximating those experienced by one who is incarcerated." [16] Matthew's day-to-day activities were unencumbered by the kind of institutional rules and routines that are the hallmark of correctional or residential rehabilitative facilities. The conditions of release did not subject him to the kind of structured, regimented life style that is the central feature of both incarceration and residential treatment programs.[17] As long as Matthew

12.  *Id.* (quoting *Lock,* 609 P.2d at 545).

13.  *Compare Ackermann v. State,* 716 P.2d 5, 6 (Alaska App.1986) (applying *de novo* standard of review in denying *Nygren* credit for time defendant spent in third-party custody on commercial fishing boat) *with Thiel v. State,* 762 P.2d 478, 486 (Alaska App.1988) (holding that the trial court was not "clearly erroneous" in denying defendant *Nygren* credit for time defendant was released on bail to custody of a co-worker at a remote mining site); and *Martin v. State,* Alaska App. Memorandum and Judgment No. 4619 at 6 (Sept. 18, 2002), 2002 WL 31060618 at *3 (concluding that the trial court's finding that treatment program was not functionally equivalent to incarceration was not clearly erroneous); and *Knix v. State,* Alaska App. Memorandum and Judgment No. 4438 at 6 (Aug. 22, 2001), 2001 WL 959589 at *3 (concluding that the trial

court's denial of motion for *Nygren* credit for time spent on non-court-ordered electronic monitoring program was not "clearly erroneous").

14.  609 P.2d at 546.

15.  *Nygren,* 658 P.2d at 146.

16.  *Id.*

17.  *Cf. People v. Ramos,* 138 Ill.2d 152, 149 Ill. Dec. 273, 561 N.E.2d 643, 647 (1990) (holding that defendant was not entitled to credit for time served while on home confinement and stating that "[a]n offender who is detained at home is not subject to the regimentation of penal institutions and, once inside the residence, enjoys unrestricted freedom of activity, movement and association."); *see also State v. Rauch,* 94 Hawai'i 315, 13 P.3d 324, 334–36 (2000) (same).

was either at home or at work, he could do whatever he wanted to do (except for consume alcohol) and was free to associate with whomever he wanted.[18] Additionally, Matthew did not suffer the same lack of privacy experienced by an offender in an incarcerative facility or residential treatment program.[19]

In arguing that he should be given credit for time served while on electronic monitoring, Matthew points out that the Department of Corrections has an electronic monitoring program. He reasons that, if sentenced prisoners in the custody of the Department of Corrections can receive credit for time served while on electronic monitoring, he should also be able to receive credit for the time he served on electronic monitoring. In making his argument, Matthew has provided us with several rulings by trial court judges in which, under this reasoning, the judges awarded credit for time served to defendants who were released on electronic monitoring prior to their incarceration.

The Alaska statutes authorize the Commissioner of the Department of Corrections to assign a sentenced prisoner already in the custody of the Department of Corrections to serve part of his term of imprisonment subject to a program of electronic monitoring.[20] We assume that the restrictions placed upon a prisoner by the Department of Corrections are similar to the conditions Matthew faced. But we conclude that, just because the Commissioner of the Department of Corrections has the authority to designate relatively unstructured ways in which a prisoner may serve a sentence, it does not follow that a person subject to those same conditions as a component of pre-custody release by the court must receive credit for time served. For instance, Alaska statutes authorize the Commissioner to release a prisoner on furlough to visit family or to obtain medical treatment.[21] Even if the Commissioner authorizes the prisoner to be released under minimal supervision, the prisoner would be entitled to credit for time spent on the furlough toward his sentence. The prisoner gets credit for time served on furlough, not because of how closely any restrictions of release approximate actual incarceration, but because this is a period of time during which the prisoner is under the jurisdiction of the Department of Corrections.

We conclude that the proper test for whether a person gets credit against his sentence for time spent on a court-ordered release is the test which the supreme court set forth in *Lock:* whether the conditions of release impose "substantial restrictions on one's freedom of movement and behavior."[22] We defined the "restrictions approximating those experienced by one who is incarcerated" in detail in *Nygren.*[23] When we apply the test in *Nygren,* we conclude that the restrictions which Matthew faced did not "approximate those experienced by one who is incarcerated." We accordingly conclude that Judge Olsen did not err in denying Matthew credit for the time during which he was released on electronic monitoring.

The judgment of the superior court is AFFIRMED.

MANNHEIMER, Judge, concurring.

I write separately to emphasize the rationale of our decision.

As Judge Coats acknowledges in the lead opinion, several superior court judges have granted defendants credit toward their sentences under the circumstances of Matthew's case. These judges' decisions were based on the theory that, because the Department of Corrections is authorized to allow prisoners

---

18. *See People v. Chavez,* 122 P.3d 1036, 1038 (Colo.App.2005), *cert. denied,* 2005 WL 3733065 (Colo. Nov.7, 2005) (holding that defendant was not entitled to credit for time served while subject to electronic monitoring and home confinement, as "defendant continued to enjoy many of the freedoms that those who have never been convicted of a crime enjoy, such as working, attending school, and socializing with family and friends").

19. *See Chavez,* 122 P.3d at 1038; *Ramos,* 149 Ill.Dec. 273, 561 N.E.2d at 647.

20. AS 33.30.065.

21. AS 33.30.121.

22. *Lock,* 609 P.2d at 545.

23. 658 P.2d at 146.

to serve their sentences at home (or some other designated residence) under electronic monitoring, defendants who participate in equivalent forms of electronic monitoring as part of their bail conditions must likewise receive credit against their sentences for the time they spend under electronic monitoring.

In other words, these judges interpreted *Nygren v. State*[1] to mean that defendants are entitled to credit against their sentences if their bail conditions resemble any form of custody authorized by the statutes and administrative regulations that govern the Department of Corrections. But as Judge Coats points out in the lead opinion, our decision in *Nygren* established a stricter rule: defendants are entitled to credit against their sentences only if the restrictions imposed by their bail conditions are the equivalent of incarceration.[2]

The *Nygren* rule does not encompass all forms of correctional custody authorized by Alaska law. For example, AS 33.30.101 and 30.121—as implemented by 22 AAC 05.271(b)(1), 22 AAC 05.316, and 22 AAC 05.326—authorize the Commissioner of Corrections to release selected prisoners on "short-duration furlough". Depending on the purpose of the furlough, these short-duration furloughs may last up to one week or longer.[3] And the Commissioner of Corrections has wide discretion concerning the conditions of a short-duration furlough; apparently, these conditions might be as minimal as having the prisoner check in with a Corrections officer on a regular basis—a modified form of release on the prisoner's own recognizance.

The fact that the Commissioner has the authority to release prisoners under this minimal form of supervision does not mean that defendants can claim credit for time served if they, too, are released on their own recognizance or under the requirement that they periodically contact their attorney or some other designated officer of the court. *Nygren* credit hinges on a defendant's subjec-

tion to restrictions that approximate incarceration.

---

1. 658 P.2d 141 (Alaska App.1983).

2. *Nygren*, 658 P.2d at 146.

3. *See* 22 AAC 05.326(a)(1), authorizing family visitation furloughs of up to one week, and 22 AAC 05.326(a)(2), authorizing medical furloughs of indefinite duration, "[no] longer than necessary for the [prisoner's medical] treatment".