Paul A. ACKERMAN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9676.

Court of Appeals of Alaska.

March 28, 2008.

James H. Cannon, Fairbanks, for the Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Paul A. Ackerman was charged with two crimes: felony driving under the influence and failure to stop at the direction of a police officer. He was released on electronic monitoring pending his trial. After Ackerman was convicted, he asked the superior court to give him credit against his sentence for the time he spent on electronic monitoring. The superior court ruled that Ackerman was not entitled to credit against his sentence, and Ackerman now appeals this ruling.

■ Under AS 12.55.025(c), a defendant is entitled to credit against their sentence "for time spent in custody pending trial [and] sentencing" if that detention was imposed in connection with the offense for which the defendant is sentenced. In *Nygren v. State*, 658 P.2d 141, 146 (Alaska App.1983), this Court held that a defendant who is released on bail (and who is therefore not in the custody of the Department of Corrections) is nevertheless entitled to credit against their sentence under AS 12.55.025(c) if the defendant's bail conditions subject the defendant "to restrictions approximating those experienced by one who is incarcerated".

In *Matthew v. State*, 152 P.3d 469 (Alaska App.2007)—a case that was decided while

Ackerman's appeal was pending—we addressed the same question raised in Ackerman's case: whether, under AS 12.55.025(c) as interpreted in *Nygren,* a defendant who is granted pre-trial release on electronic monitoring is entitled to credit against their sentence of imprisonment for the time spent on electronic monitoring.

The defendant in *Matthew* was required to wear an electronic monitoring device and he was restricted to his home, his work, and transit in between. *Id.* at 472. We held that these constraints on the defendant's activities were not so onerous as to be the equivalent of incarceration for purposes of AS 12.55.025(c). *Id.* at 472–73 (majority opinion) and at 474 (Mannheimer, J., concurring).

Ackerman's conditions of release were essentially the same as the ones discussed in *Matthew.* Ackerman was required to wear an electronic monitoring device (a device that monitored both his geographic position and his consumption of alcohol), and he was restricted to his home in Fairbanks, his work at Clear Air Force Base (including the dining hall at the base and the dormitory where Ackerman would stay during his multi-day work assignments), and transit in between. Thus, our decision in *Matthew* would seemingly govern our resolution of Ackerman's appeal.

Ackerman asks us to reconsider and reverse our decision in *Matthew.*

■ Under the doctrine of *stare decisis,* when a litigant challenges a controlling decision of this Court, "it is not enough ... to show that the [prior] decision was honestly debatable at the time, and that it might have gone the other way". Rather, a litigant who asks an appellate court to overrule an existing decision must demonstrate convincing reasons why the decision "was originally erroneous"—in other words, was never legally justifiable—or why the decision "is no longer sound because of changed conditions". *Erickson v. State,* 950 P.2d 580, 587 (Alaska App.1997) (quoting *State v. Dunlop,* 721 P.2d 604, 610 (Alaska 1986)).

Ackerman argues that our decision in *Matthew* was originally erroneous. In particular, he relies on an exchange that occurred during the 1998 House Judiciary Committee's discussion of House Bill 272. This bill, which eventually became SLA 1998, ch. 116, enacted two companion statutes: AS 33.30.061(c) and AS 33.30.065. These statutes authorize the Commissioner of Corrections to release prisoners from correctional facilities to serve their sentence at their residence (or at some other specified living place) under electronic monitoring. Ackerman contends that a portion of the committee's discussion shows that the legislature intended to give *Nygren* credit to defendants who are released on bail under electronic monitoring.

The minutes of the Judiciary Committee for February 18, 1998, contain the following colloquy between Representative Ethan Berkowitz, Representative Joe Green (the Chair of the Committee), and Kevin Jardell, a legislative aide working for Representative Green:

Representative Berkowitz noted that this [proposed statutory amendment] addresses [release on electronic monitoring following] conviction, but not bail.

Mr. Jardell concurred and explained that they don't want to get too expansive in this [release on electronic monitoring] project. They want to allow the Department of Corrections to focus on a specific group of prisoners that have already been convicted, and to try to implement an effective program. He expressed hope that, if it is successful and can be done economically and efficiently, it could be expanded later to address those concerns [*i.e.,* defendants released on bail]. He noted that Fred's Bail Bonding in Anchorage now has some private electronic monitoring for pretrial or bail situations.

Representative Berkowitz commented that Fred does have a quasi-governmental sta[tus, and if he] can get bail with electronic monitoring, that person would qualify for *Nygren* or jail term credit.

Chairman Green said that may be.

Mr. Jardell stated his impression that Representative Berkowitz is correct. He added, "My understanding of *Nygren* is that, if the court orders you to any type of incarceration, ... that incarceration can be counted as *Nygren* credit.... I would

imagine [that whenever a defendant is] under any kind of electronic monitoring, it would be [at the order of] the courts."

(Minutes for Tape 98–19, Side B, log nos. 0848 to 0935)

Ackerman argues that the comments of Rep. Berkowitz and Mr. Jardell support the conclusion that the legislature intended, or at least foresaw, that defendants released on bail under electronic monitoring would receive credit against their sentences (in the event they were convicted).

It is true that Rep. Berkowitz and Mr. Jardell expressed the view that defendants released on bail under electronic monitoring would be entitled to *Nygren* credit. But it is also clear, from this quoted passage, that the issues of bail release and potential *Nygren* credit were not before the Committee. When Rep. Berkowitz pointed out that the proposed electronic monitoring legislation did not include defendants on bail release, Mr. Jardell answered that the drafters of the bill had consciously decided to limit the scope of the law to prisoners who had been convicted of crimes and were serving their sentence. Thus, although Rep. Berkowitz and Mr. Jardell expressed views on the subject of *Nygren* credit for defendants who were released on bail with electronic monitoring, Mr. Jardell clearly stated that this subject was beyond the scope of the proposed bill. This being so, the question of *Nygren* credit was seemingly irrelevant to the Judiciary Committee's decision—or the full legislature's later decision—regarding the proposed electronic monitoring bill.

Ackerman also argues that bail release under electronic monitoring is a significantly different status from bail release without electronic monitoring. At oral argument, Ackerman acknowledged that, absent electronic monitoring, his conditions of release would not, by themselves, entitle him to *Nygren* credit. But Ackerman argues that the addition of electronic monitoring alters the equation so as to yield a new legal result.

We disagree. The fact of electronic monitoring did not alter or add to the restrictions placed on Ackerman's whereabouts or activities. Instead, electronic monitoring was a way for the court to find out whether Ackerman was abiding by those restrictions.

Ackerman argues that defendants feel a different psychological pressure when they know that an electronic monitoring device is keeping track of their physical movements and their alcohol intake. But defendants have no protected right to violate the conditions of release if they can get away with it.

In sum, we re-affirm our conclusion in *Matthew* that the constraints imposed by electronic monitoring are not the equivalent of incarceration for purposes of AS 12.55.025(c).

But even if the matter remained debatable, this would not be sufficient for Ackerman to prevail in this appeal. Under the doctrine of *stare decisis,* it is not enough for Ackerman to show that our decision in *Matthew* was honestly debatable at the time, or that the decision might have gone the other way. Rather, it is Ackerman's burden to convincingly demonstrate that *Matthew* was wrong from the beginning. He has not met this burden.

Accordingly, we decline to overrule *Matthew.* And, because our decision in *Matthew* governs Ackerman's claim in this appeal, the judgement of the superior court is AFFIRMED.