Bobby Lee McKINLEY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10009.

Court of Appeals of Alaska.

Sept. 11, 2009.

---

58. *Id.* at 17.

David Reineke, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

Bobby Lee McKinley argues that he should receive credit against his sentence of imprisonment for the time he spent in transitional housing while attending aftercare treatment at the Salvation Army Adult Rehabilitation Program. We conclude that, although McKinley was placed in residential treatment at the Salvation Army by a court order, his residence at the program for aftercare did not approximate incarceration because the program did not require residency, and because the facility did not require twenty-four hour custody or supervision.

### Background

McKinley was indicted on one count of second-degree theft[1] on January 14, 2004,

1. AS 11.46.130(a)(1).

and was convicted of that charge on September 6, 2006. Prior to the entry of McKinley's no-contest plea, the superior court ordered McKinley to enter the Salvation Army's six-month residential treatment program as a condition of his pretrial release, and he remained at that facility until he completed residential treatment. Immediately after McKinley completed the residential treatment program, he entered the Salvation Army's aftercare program. McKinley missed two weekly group meetings and was consequently discharged from the aftercare program and evicted from the Salvation Army facility.

While participating in the aftercare program, McKinley lived in one of the Salvation Army's "grad rooms." These rooms provide optional transitional housing for residential program graduates enrolled in the Salvation Army's aftercare program. In order to remain in these facilities, the residents must comply with the Salvation Army's house rules.

Superior Court Judge Philip R. Volland granted McKinley's request for credit against his sentence for the time he spent in residential treatment. But McKinley also filed a motion requesting credit for the time he resided at the Salvation Army facility during aftercare. At a hearing on McKinley's motion, Larry Dean Bundy, the director of the Salvation Army program, testified that McKinley's residence during the aftercare program was essentially at the same location as the residential treatment facility, but that McKinley had significantly more freedom. Specifically, participants in the aftercare program could sign out—registering their destination and expected time of return—from six o'clock in the morning until curfew at eleven o'clock at night.

Judge Volland denied McKinley's request for credit for the time he attended the Salvation Army's aftercare program. The judge found that McKinley voluntarily chose to reside at its transitional housing and to be subjected to the Salvation Army's rules. Judge Volland also found that the Salvation Army aftercare program allowed McKinley

to "basically go about ..., [and] do anything and everything that someone who is not in an incarcerative facility can do." Judge Volland ruled that McKinley was not entitled to credit for any of his time at the Salvation Army facility after he completed the residential treatment program.

McKinley now appeals.

### Discussion

Alaska Statute 12.55.025(c) requires a sentencing judge to give a defendant "credit for time spent in custody pending trial, sentencing, or appeal...." In *Nygren v. State*, we held that this statute requires credit for time spent in residential treatment, as long as the defendant "is subjected to restrictions approximating those experienced by one who is incarcerated."[2] We listed a number of criteria that define a custodial facility:

> [T]heir residents are invariably sent there by court order; the facilities require residency, and residency requirements are sufficiently stringent to involve a definite element of confinement; residents of the facilities are subject to twenty-four hour physical custody or supervision; any periods during which residents may be permitted to leave the facility are expressly limited, both as to time and purpose; while in the facility, residents are under a continuing duty to conform their conduct to institutional rules and to obey orders of persons who have immediate custody over them; and residents are subject to sanctions if they violate institutional rules or orders and to arrest if they leave the facility without permission.[3]

In this case, we address three of these *Nygren* criteria to determine whether McKinley was in custody during the aftercare program: (1) whether the program required residency at the Salvation Army facility, (2) whether the facility required twenty-four hour physical custody or supervision, and (3) whether a court order required McKinley to reside at the facility.[4]

The first two criteria suggest that McKinley was not in custody during the aftercare program. First, Judge Volland found that Salvation Army did not require McKinley to reside at the program while he was enrolled in aftercare. This finding is supported by Mr. Bundy's statement that residence in transitional housing during aftercare was an option for those who had graduated from the residential program. The only required attendance at the Salvation Army facility was for a one-hour group session held once each week. Judge Volland's finding is also supported by McKinley's testimony admitting that if he had different housing, he could have resided elsewhere. The record thus supports Judge Volland's finding that the aftercare program did not require residency.

The second *Nygren* criterion is twenty-four hour physical custody or supervision. Judge Volland found that those patients who chose to reside at the Salvation Army facility during aftercare were free to do anything during the day subject only to the obligation to sign out. This finding is supported by Bundy's testimony that aftercare patients who chose to reside in transitional housing could leave as early at 6:00 a.m. and not return until 11:00 p.m. An aftercare patient could choose to spend the whole day visiting with family, going shopping, or even going to the state fair. Thus, during the aftercare program, McKinley was not subject to twenty-four hour physical custody or supervision.

McKinley argues that his aftercare program was similar to the work-release program that we approved for credit in *State v. Fortuny*.[5] But *Fortuny* involved a residential program where the residents could be released only for a limited purpose: for work subject to program supervision.[6] In contrast, McKinley was free to leave the Salva-

---

**2.** 658 P.2d 141, 146 (Alaska App.1983).

**3.** *Id.*

**4.** We accept the findings of the trial court regarding the conditions of release unless those findings are clearly erroneous. But we review de novo whether the conditions approximate incarceration. *See Matthew v. State*, 152 P.3d 469, 472 (Alaska App.2007).

**5.** 42 P.3d 1147 (Alaska App.2002).

**6.** *Id.* at 1149–51.

tion Army facility with only a limited restriction—he had to state his plans when he signed out. This sign-out requirement did not transform McKinley's residence in transitional housing into the twenty-four hour supervision that approximates incarceration.

The third *Nygren* criterion is less conclusive. Judge Volland recognized that it was questionable whether a court order required McKinley to reside at the Salvation Army facility during his aftercare. When McKinley originally requested release to the Salvation Army program, his attorney only referred to the six-month residential component of the program. But the written court order simply stated that McKinley was released to "SAARP," suggesting that he was required to reside at the Salvation Army facility indefinitely. At best, the court order was ambiguous and McKinley has a colorable argument that he was required to stay at the facility pending further court order.

But even assuming the superior court ordered McKinley to reside at the Salvation Army during aftercare, we have previously recognized that a court order alone does not turn conditions of pretrial release into custodial confinement. For example, a court order for twenty-four hour electronic home monitoring does not require credit for time served because electronic monitoring does not approximate custodial incarceration.[7] Likewise, a court order for twenty-four hour

third-party custody does not establish that such a release approximates custodial incarceration.[8] We accordingly conclude that McKinley was not necessarily subjected to incarceration during his aftercare simply because his residence there was designated by a court order. Regardless of the court order, McKinley's aftercare did not approximate incarceration because the aftercare program did not require residency and because the facility did not require twenty-four hour custody or supervision.

In closing, we note that this case does not involve the application of AS 12.55.027, a statute that applies to sentences imposed on or after July 1, 2007.[9] We express no opinion on the application of this statute because McKinley was sentenced before it became effective.

### Conclusion

Judge Volland correctly concluded that McKinley was not entitled to credit for the time he resided at the Salvation Army transitional housing during his aftercare. We therefore AFFIRM the superior court order denying McKinley credit for time served.

---

7. *See Ackerman v. State,* 179 P.3d 951 (Alaska App.2008); *Matthew,* 152 P.3d at 473.

8. *See Ackermann v. State,* 716 P.2d 5, 6 (Alaska App.1986).

9. *See* ch. 24, § 36(a), SLA 2007.