246 P.3d 338 (2010)
STATE of Alaska, Appellant,
v.
Christopher SHETTERS, Appellee.
No. A-10378.
Court of Appeals of Alaska.
December 23, 2010.
*339 John K. Bodick, Assistant Attorney General, Criminal Division Central Office, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellant.
Tracey Wollenberg, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellee.
Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

OPINION ON REHEARING
MANNHEIMER, Judge.
The State of Alaska has petitioned us to reconsider two aspects of our decision in this case, State v. Shetters, 246 P.3d 332 (Alaska App.2010).
First, the State asks us to reconsiderand withdrawthe following italicized portion of the statement we made at the conclusion of our earlier opinion:
[W]hen the Parole Board orders a mandatory parolee to reside at a correctional restitution center, a halfway house, or any other non-prison correctional center, the mandatory parolee is entitled to both (1) credit for time served and (2) good time credit corresponding to the period of their enforced residence at the correctional center if the Board later revokes their parole and orders them to serve some or all of their remaining sentence.
Shetters, 246 P.3d at 338.
The State argues that the only issue presented in this appeal is whether parolees in Shetters's situation should receive good time creditand that we should not have reached any conclusion as to whether such parolees are entitled to credit for time served. The State contends that we erred in deciding this issue because "[this issue] was not raised or argued in the trial court" nor was it "raised or briefed on appeal".
The State suggests that we may have been confused concerning the status of the "credit for time served" issuei.e., confused as to whether this issue was in disputebecause the Parole Board did grant Shetters credit against his sentence for the time he served at the halfway house. The State argues that we should not have interpreted the Parole Board's action as an acknowledgement that *340 all similarly situated parolees are entitled to credit against their sentences for the time they spend in halfway houses or other non-prison correctional centers after the Parole Board orders them to reside there. Instead, the State contends that Shetters received credit for time served only because the Parole Board, in its discretion, chose to give Shetters this credit against his sentence.
The State's argument rests on two basic assertions. First, the State asserts that parolees who are ordered by the Parole Board to reside at non-prison correctional centers might be entitled to good time credit for the time they spend in the correctional center, but these same parolees would not be entitled to credit for time served. Second, the State asserts that the Parole Board may, in its discretion, choose either to award or withhold credit for time served when the Board orders a parolee to reside at a non-prison correctional center.
We reject both of these assertions.
The good time credit statute, AS 33.20.010(a), states that a prisoner is entitled to a deduction of one-third from their sentence of imprisonment "if the prisoner follows the rules of the correctional facility in which the prisoner is confined." As we held in Valencia v. State, 91 P.3d 983, 984 (Alaska App.2004), this statute means that a person is entitled to good time credit only when they are serving their sentence.
As our decision in Valencia illustrates, there are times when a person is confined to a jail-like facility and is entitled to credit for time served, but not entitled to good time credit. But the converse is not true; there are no situations where a person might be entitled to good time credit but not credit for time served.
Thus, the whole debate in Shetters's casethe debate as to whether Shetters was entitled to good time credit for the time he spent at the correctional restitution center was premised on the fact that Shetters was entitled to credit against his sentence for the days he spent at the correctional restitution center.
This brings us to our second point: We reject the State's position that when the Parole Board orders a parolee to reside at a non-prison correctional center, the Parole Board has the discretion either to award the parolee credit for time served or to withhold this credit from the parolee. We hold instead that an award of credit for time served does not rest within the discretion of the Parole Board, any more than it rests within the discretion of a sentencing court. A parolee's entitlement to credit for time served hinges on the reasons for, and the conditions of, the parolee's confinement. For any identified set of circumstances, all parolees in that situation either will or will not be entitled to credit for time served.
The basic idea behind "credit for time served" is to make sure that defendants who receive the same sentence of imprisonment spend the same total amount of time in jail. Under AS 12.55.025(c), defendants who remain incarcerated before judgement is entered against them receive credit against their sentence for this pre-judgement incarcerationso that they serve no more jail time than defendants who ultimately receive the same sentence but who were able to secure bail release pending trial and sentencing.
Because this is the rationale behind giving defendants credit for time served, a sentencing judge has no discretion regarding whether to grant or deny a defendant credit for the time they spent incarcerated before sentencing. Credit for time served is not a discretionary reduction of the defendant's post-judgement time to serve. Instead, the defendant is either entitled to this credit or not, under the terms of the statute. Herrin v. State, 93 P.3d 477, 478 (Alaska App.2004).
In Lock v. State, 609 P.2d 539 (Alaska 1980), and in Nygren v. State, 658 P.2d 141 (Alaska App.1983), the Alaska Supreme Court and this Court expanded the situations in which a defendant is entitled to credit for time served. We held that a defendant should receive credit for time served at a non-prison facility if the restrictions on freedom imposed by that facility are substantially equivalent to the restrictions of normal incarceration. Lock, 609 P.2d at 545-46; *341 Nygren, 658 P.2d at 146. But in deciding whether credit for time served should be awarded under Lock and Nygren, the same principle applies: All defendants in the same situation either are entitled to the credit or not; the award of this credit is not discretionary.
This principle also applies when the Parole Board initiates proceedings to revoke a person's mandatory parole. Under AS 33.16.240(f), "[t]ime spent in custody pending revocation proceedings shall be credited toward the [parolee's] unexpired term of imprisonment". If the Parole Board orders a parolee to reside at a facility pending the Board's final decision on the petition to revoke parole, the parolee either will or will not be entitled to credit against their sentence for the time served at that facility, depending on whether the parolee's residence at that facility qualifies as "custody" for purposes of the statute. But among parolees who are similarly situated, the Parole Board has no discretion to grant this credit to some and deny it to others.
(As an ancillary argument, the State suggests that if credit for time served is granted to parolees who are ordered to reside in a non-prison correctional center by the Parole Board, this might conceivably conflict with the rules codified in AS 12.55.027 governing credit for time served in treatment programs. The State does not assert that any such conflict exists in Shetters's case, and we therefore express no opinion on the issue of whether such a conflict might conceivably exist in other situations.)
The State makes one final request in its petition for rehearing: The State asks us to decide whether parolees in Shetters's situation should be required to pursue their claims for good time credit by filing a petition for post-conviction relief, rather than by filing a motion for relief in their underlying criminal case.
In the superior court, Shetters filed his request for good time credit as a motion in his underlying criminal case. In its response, the State argued that this was the wrong procedural vehicle, and that Shetters should be directed to pursue his claim in a separate petition for post-conviction relief.
Superior Court Judge Michael L. Wolverton ultimately agreed with the State: he declared, "I will make the ruling that this should be filed as a PCR [i.e., a post-conviction relief action]." But no sooner had Judge Wolverton announced this ruling than the State's attorney asked the judge not to implement his ruling.
The State's attorney pointed out that, if the proceeding was reclassified as a post-conviction relief action, the superior court would have no authority to release Shetters on bail while the action was pending.[1] This being so, and because Shetters was seeking only seven days of good time credit, Shetters would certainly serve the entire contested seven days before the parties filed their initial post-conviction relief pleadings.
To the State's attorney's credit, he forthrightly told Judge Wolverton that the State's primary interest was not to force Shetters to serve the contested seven days, but rather to obtain a speedy resolution of the legal question presentedthe question of whether parolees in Shetters's position are entitled to good time credit.
Because the material facts of Shetters's case were not disputed, and because the issue to be resolved was purely one of law, the State's attorney indicated that he was willing to waive the procedural requirements that govern post-conviction relief litigation. The State's attorney urged Judge Wolverton to overlook any procedural irregularities and to simply rule on Shetters's good time credit claimso that, if Judge Wolverton ruled in Shetters's favor, the State could immediately begin the appeal process.
Judge Wolverton then ruled in Shetters's favor on the underlying issue of Shetters's entitlement to good time credit, and the State filed this appeal.
One of the issues that the State briefed on appeal (and that Shetters responded to) was *342 the procedural issue of whether Shetters should have pursued his claim in a post-conviction relief action rather than by a motion filed in the underlying criminal case. We did not address this procedural question in our earlier decision in this case, and the State asks us to resolve the issue now. But given the procedural history of this litigation, this issue is moot.
As we just explained, Judge Wolverton ruled in the State's favor on this procedural issue: the judge was going to force Shetters to start over and file new pleadings that complied with the procedural requirements of a post-conviction relief action. But as soon as Judge Wolverton made this ruling, the State asked him not to implement his ruling; rather, the State's attorney encouraged the superior court to overlook the procedural irregularity and (in effect) "cut to the chase"that is, issue a final ruling on Shetters's underlying good time credit claim. By doing so, the State effectively conceded that it would suffer no prejudice if Shetters failed to conform to the procedural requirements that govern post-conviction relief actions. In other words, these procedural requirements had no importance to the litigation of Shetters's caseand, thus, the question of whether the State might otherwise have been entitled to insist on those procedural requirements is moot.
This Court has the authority to decide a moot issue if the issue is one of substantial public importance and if the issue is likely to repeatedly evade review if the normal mootness doctrine is applied. Here, the issue may be one of substantial importance, but there is no reason to believe that application of the mootness doctrine will repeatedly defeat appellate review of this issue in future cases.
For this reason, we decline to decide whether a petition for post-conviction relief is the only procedural vehicle available to parolees in Shetters's situation who wish to pursue a claim for good time credit.

Conclusion
For the reasons explained here, we reject the arguments raised by the State in its petition for rehearing, and we re-affirm the conclusion we reached in our earlier decision: mandatory parolees who are remanded to custody in a correctional restitution center, a halfway house, or other non-prison correctional center by order of the Parole Board are entitled to both (1) credit for time served and (2) good time credit corresponding to the period of their confinement if the Board later revokes their parole and orders them to serve some or all of their remaining sentence. The judgement of the superior court is AFFIRMED.
NOTES
[1] See AS 12.30.040(c): "A person ... who has filed an application for post-conviction relief may not be released [on bail] until the court [grants relief and] enters an order vacating all [of the person's] convictions."