NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*
*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

STATE OF ALASKA,

Appellant,

v.

LEONARD J. HOWARD,

Appellee.

Court of Appeals No. A-11430
Trial Court No. 4AK-08-31 CR

O P I N I O N

No. 2475 — September 18, 2015

Appeal from the Superior Court, Fourth Judicial District, Bethel, Charles W. Ray Jr., Judge.

Appearances: Michael Sean McLaughlin, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellant. Catherine Boruff, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Andrews, Senior Superior Court Judge.[*]

Judge ALLARD, writing for the Court.
Chief Judge MANNHEIMER, with whom Senior Judge ANDREWS joins, concurring.

---

[*]    Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

The State appeals an order by the superior court discharging Leonard J. Howard from probation and granting him a 12-month credit against his sentence based on a legal theory that was never litigated by the parties. On appeal, Howard concedes that the superior court's ruling was flawed, and he agrees that he is not entitled to the 12-month credit.

Howard argues, however, that he is entitled to discharge from his probation. He asserts that he is owed jail-time credit for time he spent in a halfway house and in residential treatment while he was on parole and probation. Howard further asserts that once this jail-time credit is properly applied to his remaining sentence, there will be no more time to serve in his case. He therefore urges this Court to affirm the order discharging him from probation on this alternative ground.

For the reasons explained here, we agree with the parties that the superior court erroneously gave Howard a 12-month credit against his sentence. We also conclude that we cannot determine from the current record whether Howard is entitled to the jail-time credit he seeks. Accordingly, we vacate the superior court's order and remand the case to the superior court for further proceedings consistent with this decision.

*Factual and procedural background*

In 2008, Leonard Howard pleaded guilty to third-degree assault. He received a sentence of 48 months' imprisonment with 45 months suspended (3 months to serve), and he was also sentenced to supervised probation for 5 years.

Over the next three years, Howard's probation was revoked four times. At Howard's first probation revocation hearing, the superior court imposed 3 months of Howard's suspended time (leaving 42 months still suspended on Howard's original

sentence). After serving this sentence (2 months of actual imprisonment, plus 1 month of good-time credit),[1] Howard was released on probation.

At Howard's second probation revocation hearing, the superior court imposed 6 months to serve (leaving 36 months still suspended on Howard's original judgment). After serving this sentence (4 months of actual imprisonment, plus 2 months of good-time credit), Howard was again released on probation.

At Howard's third probation revocation hearing, the superior court imposed 24 months to serve (leaving 12 months still suspended on Howard's original judgment). This 24-month sentence was sufficiently long enough to trigger the requirements of mandatory parole under AS 33.20.040(a).[2] Thus, after serving two-thirds of the 24-month sentence for his third probation revocation (*i.e.*, after serving 16 months), Howard was released on mandatory parole and required to serve a parole term equivalent to the good time awarded on his 24-month sentence (*i.e.*, he was required to serve 8 months under parole supervision).[3] In addition, because Howard was still on probation, and still had 12 months of suspended time on his original sentence, he was not done with his probation obligations.

Under Alaska law, probation runs concurrently with parole.[4] Thus, when Howard was released from prison after serving his sentence for his third probation revocation, he was under the concurrent jurisdiction of both the Parole Board and the superior court. This meant that if Howard violated the terms of his parole, he would be

---

[1] *See* AS 33.20.010; AS 33.20.030.

[2] AS 33.20.040(a) provides that when a prisoner serving two or more years of active imprisonment is released because of good-time credit, the prisoner must be released on mandatory parole for a term equal to their good time.

[3] *Id.*

[4] AS 33.20.040(c).

subject to parole revocation by the Parole Board, and the Board could potentially revoke the 8 months of good-time credit that he was serving on parole and send him back to prison to serve those 8 months. In contrast, if Howard violated the terms of his probation, he would be subject to probation revocation by the superior court, and the court could potentially impose some or all of the remaining 12 months of suspended jail time from his original sentence.

Although Howard faced different consequences for violating his parole and probation, the same person served as his parole and probation officer, and that person was simultaneously tasked with overseeing Howard's compliance with both his parole and probation conditions.[5]

According to the pleadings Howard filed in the superior court, Howard was scheduled to be released from incarceration for his third probation revocation on February 1, 2011, but he was not actually released from custody on that day. Instead, Howard claims that his parole/probation officer directed him to reside at the Tundra Center, a halfway house in Bethel. Howard apparently remained at this halfway house for 132 days, until a treatment bed opened up at the Phillips Ayagnirvik Treatment Center, a residential substance abuse treatment program in Bethel. Howard spent 32 days in this residential treatment program and was released on July 15, 2011. That fall, Howard was discharged from parole, having successfully completed his parole without any violations or revocations. (We do not know the exact date when Howard was discharged from parole, because his parole discharge report is not part of the record.)

---

[5] *See* AS 33.05.040(5) (when a probation officer performs duties with respect to persons on parole, the probation officer is deemed a parole officer); AS 33.16.190 (a person appointed as a probation officer or as a parole officer may discharge the duties of either office).

Although Howard was discharged from parole, he was still on probation, and he still had 12 months of suspended time on his original sentence that the superior court could impose if Howard violated the terms of his probation.

In early 2012, Howard again violated the terms of his probation, and the State filed a fourth petition to revoke probation. Superior Court Judge *pro tem* Natalie Finn presided over Howard's fourth probation revocation hearing. At the hearing, Judge Finn revoked Howard's probation and imposed 6 months of Howard's remaining 12 months of suspended jail time. However, Judge Finn also found that, given Howard's repeated failures at probation and his ongoing substance abuse issues, it would be pointless for Howard to continue on probation. Judge Finn therefore ordered that once Howard served the 6-month sentence imposed for his fourth probation violation, his probation would terminate and he would be unconditionally discharged from his sentence.

Instead of immediately serving this final 6-month sentence, Howard asked that his remand date be postponed so that he could litigate whether he might be entitled to jail-time credit against this sentence based on the time he spent after his third probation revocation at the halfway house and the residential treatment center. Judge Finn granted this request. Howard therefore remained out of custody while the parties litigated the issue of jail-time credit.

By the time Howard's attorney filed the motion for jail-time credit, Superior Court Judge Charles W. Ray Jr. had been appointed as a superior court judge in Bethel. Howard's motion was therefore assigned to Judge Ray.

In his motion for jail-time credit, Howard argued that he had been placed at the Tundra Center halfway house under the authority of the Parole Board, and that he was therefore entitled to "*Shetters*" credit (*i.e.*, day-for-day credit plus good-time credit)

for the time he spent at the halfway house.[6] Howard calculated that he was owed a credit of 198 days for the 132 days that he spent at the halfway house.

Howard further argued that he was entitled to "*Nygren*" credit under AS 12.55.027 for the 32 days that he spent in residential treatment at the Phillips Ayagnirvik Treatment Center.[7] Adding this residential treatment center time to the 198 days of halfway house time, Howard calculated that he was entitled to 230 days of jail-time credit against his current 6-month sentence — which would mean that he had already fulfilled his remaining 6-month sentence and was entitled to an unconditional discharge.

While the parties were litigating this jail-time credit issue, Howard apparently again violated the terms of his probation. The State then filed a fifth petition to revoke probation.

Howard moved to dismiss this fifth petition to revoke probation, contending that he was no longer on probation. The State disagreed, pointing out that under the terms of Judge Finn's order, Howard remained on probation until he completed the 6-month sentence — which the State argued he had not yet done.

---

[6] *See State v. Shetters*, 246 P.3d 332 (Alaska App. 2010) (holding that a parolee who is released on mandatory parole is still technically a prisoner, and thus entitled to good-time credit if placed in a halfway house or other correctional facility under the authority of the Parole Board).

[7] A defendant's eligibility for credit against his or her sentence for time spent in a residential treatment facility is governed by AS 12.55.027. This credit is still informally known as "*Nygren*" credit because *Nygren v. State*, 658 P.2d 141 (Alaska App. 1983) is the court decision that first acknowledged a defendant's right to sentencing credit for time spent in treatment under jail-like conditions.

*The court order that is challenged in this appeal*

The superior court now had to decide two motions: Howard's requests for *Shetters* and *Nygren* credit against his 6-month sentence, and Howard's motion to dismiss the fifth petition to revoke his probation.

The judge's initial response was to order Howard to submit his time-accounting records from the Department of Corrections. The judge explained that he was requesting these records to determine whether Howard had been placed at the halfway house as a condition of parole or as a condition of probation, so that he could determine what, if any, jail-time credit Howard was owed.

The judge subsequently issued a lengthy written decision in which he found that Howard was entitled to be unconditionally discharged — but under a theory that neither the State nor Howard had ever raised or argued.

In that decision, the judge explained that he remained uncertain about whether Howard was at the halfway house under the authority of the Parole Board or under the authority of the superior court (or perhaps both). But in investigating this question, the judge discovered what he believed to be a "legal error" in Howard's case — namely, that "Howard ha[d] been ordered to [serve] a term of imprisonment greater than the term permissible under his sentence."

The purported error identified by the judge arose as part of Howard's *second* probation revocation. As part of the disposition for that revocation, the superior court imposed a new condition of probation that authorized Howard's probation officer to place Howard at a halfway house for up to 12 months, at the probation officer's discretion.

Judge Ray concluded that this new condition of probation constituted an illegal increase in Howard's sentence because it potentially subjected Howard to an additional 12 months in custody beyond the term of imprisonment imposed in his

– 7 – 2475

original sentence.[8]  The judge then declared that "in the interest of justice," Howard's sentence for his second probation revocation needed to be increased to account for these 12 additional months of potential custody.

The judge therefore ruled that Howard's sentence for his second probation revocation was really 18 months to serve, not the 6 months to serve recorded in the judgment.  This meant, in the judge's view, that Howard only had 24 months of suspended time remaining on his original sentence following his second probation revocation, not 36 months as previously calculated.  Thus, according to the judge, when the superior court imposed 24 months to serve at Howard's *third* probation revocation, there was actually no more suspended time remaining on Howard's original sentence, and his probation was already effectively over.[9]

Therefore, under the judge's view of Howard's case, after Howard served the 24-month sentence for his third probation revocation, Howard should have been placed on parole supervision to serve his 8 months of good-time parole, but he should not have been placed on concurrent probation because he was no longer on probation.  And, when Howard successfully completed his parole term, he should have been done with all of his supervision in this case.

Because the judge concluded that Howard was not lawfully on probation when the State filed its fourth and fifth petitions to revoke probation, the judge vacated the judgment on the fourth probation revocation and dismissed the State's fifth petition.

---

[8]  *See, e.g.*, *Williams v. State*, 924 P.2d 104, 108 (Alaska App. 1996) (holding that a condition of probation requiring the defendant to spend up to one year in a halfway house at the discretion of the probation officer was lawfully imposed under AS 12.55.100(a)(5) because it was imposed as part of the *original* sentence).

[9]  *See Kelly v. State*, 842 P.2d 612, 613 (Alaska App. 1992) (declaring that a probationary period is "meaningless" unless a portion of the sentence is suspended).

The judge also ordered that Howard be unconditionally discharged from any further obligations in this case.

The State appeals.

*Why we reverse the superior court's decision*

On appeal, Howard and the State both agree that the superior court's reasoning was erroneous and that Howard is not entitled to discharge from his sentence for the reasons stated in the judge's order. We agree with the parties that the judge's reasoning was flawed.

Even assuming that the halfway-house probation condition was illegal (a question we do not reach here), there is no legal basis for the court's decision to give Howard 12 months of jail-time credit based on the *possibility* that Howard might have served that amount of time at a halfway house under the purportedly illegal probation condition, when in fact Howard was not placed at a halfway house under that condition. The remedy for an illegal probation condition must be tailored to the prejudice, if any, suffered by the imposition of the condition.

Here, Howard has shown no prejudice. As the State points out, although the purportedly illegal probation condition was imposed as part of Howard's second probation revocation, it did not remain in effect for long. At the proceedings for Howard's third probation revocation, the court re-imposed only the terms and conditions of Howard's *original* judgment, which did not include the halfway-house condition. The halfway-house probation condition was therefore no longer in effect at the time Howard was purportedly directed to stay at the halfway house in February 2011.

*Why we conclude that a remand is necessary to determine if there is any*
*merit to Howard's claims for jail-time credit*

Although Howard agrees that the superior court's reasoning was erroneous, he nevertheless contends that the end result of the court's decision — *i.e.*, his unconditional discharge in this case — was correct. Howard asserts that once the *Shetters* and *Nygren* credit he is owed is properly credited against his remaining 6-month sentence, he will have served all his time and will be entitled to an unconditional discharge. Howard urges this Court to uphold the superior court's ruling on this alternative basis.

We agree with Howard that if he was placed at the halfway house in February 2011 under the authority of the Parole Board, he would be entitled to day-for-day credit plus good-time credit for the 132 days he spent there under our decision in *State v. Shetters*.[10] And if Howard had violated the terms of his parole and his parole had been revoked in this case, the Parole Board presumably would have granted him this credit against the 8 months of time that he otherwise owed the Board.

But Howard successfully completed his parole without any parole revocations. There was therefore apparently no need to grant Howard whatever *Shetters* credit he may have otherwise accrued because there were no revocations against which to apply that credit. Moreover, because Howard's parole was never revoked and he no longer owes the Parole Board any time, the question of whether he should have nevertheless received *Shetters* credit against the time he previously owed the Parole Board is now moot.

In the alternative, Howard argues that he is entitled to day-for-day *Nygren* credit under AS 12.55.025(c) for the time he spent at the halfway house as a court-ordered condition of his probation. But as Judge Ray recognized, the current record does

---

[10] *State v. Shetters*, 246 P.3d 332, 337 (Alaska App. 2010).

not establish whether Howard was ordered into the halfway house as a condition of probation, as a condition of his parole, or both, and the judge made no finding on this issue. It is therefore premature for us to decide, based on the speculative possibility that Howard was ordered into the halfway house as a condition of his probation, whether he would be entitled to jail-time under AS 12.55.025(c) in that situation.

Howard also argues that he is entitled to *Nygren* credit under AS 12.55.027 for the time he spent in residential treatment because he was ordered to participate in that treatment as a condition of his probation.[11] But again, as we just explained, the current record does not reveal whether, or under what legal authority, Howard's probation/parole officer ordered him to participate in treatment. Moreover, to obtain credit for time spent at a treatment facility under AS 12.55.027, a defendant must show that he is entitled to credit under that statute, which requires the defendant to show that he was placed at the facility under a court order (typically a bail order or a probation order) and that the conditions of confinement at the facility qualified for jail-time credit.[12]

Because the record does not show under what authority Howard was sent to the halfway house and the residential treatment facility, or whether his confinement at those facilities met the requirements for *Nygren* credit under AS 12.55.025(c) and AS 12.55.027, we remand this case to the superior court for further proceedings on these questions. On remand, Howard may renew whatever claims for jail-time credit he believes he may have.

---

[11]  *See* AS 12.55.027.

[12]  In 2014, the legislature amended AS 12.55.027(c) to broaden the types of programs that qualify for *Nygren* credit. *See* ch. 83, § 23, SLA 2014.

*Additional guidance on motions for <u>Shetters</u> credit*

We take this opportunity to provide some additional guidance to trial courts that might face joint *Shetters/Nygren* motions like the one filed in this case.

As we noted above, when a defendant files a motion for *Nygren* credit under AS 12.55.025(c) or AS 12.55.027, the defendant must show that he is entitled to jail-time credit under those statutes. If the court finds that the statutory conditions have been met, the defendant is entitled to the requested credit. The court then issues an order granting the credit and, when the Department of Corrections receives the court's order, it will adjust the defendant's time accounting accordingly.

The process for obtaining *Shetters* credit is different. If a defendant has been placed at a halfway house under the authority of the Parole Board, the Department of Corrections will, in most cases, automatically grant the defendant the credit accrued through that placement if and when the defendant's parole is revoked. The only time the superior court becomes involved in this process is if the defendant disagrees with the Department of Corrections' calculation of *Shetters* credit. In that circumstance, the defendant may seek judicial review of the Department's time accounting in the superior court.

Like other requests to correct a defendant's time accounting, a request for *Shetters* credit is most appropriately made as an application for post-conviction relief rather than as a motion in the underlying criminal case.[13] The post-conviction process helps to ensure that the Department of Corrections will be given notice of the case and that the State will be represented by an attorney who normally represents the Department of Corrections (typically, an assistant attorney general). Such attorneys will generally

---

[13] *See* Alaska R. Crim. P. 35.1(a)(5) (post-conviction relief proceedings cover challenges to the lawfulness of a defendant's custodial restraint).

be in a better position to respond to the defendant's time accounting arguments than the assistant district attorney assigned to the defendant's criminal case.

That said, in *Shetters*, the defendant sought good-time credit for his time at a halfway house through a motion in the underlying criminal case, not through an application for post-conviction relief.[14] And on appeal, we declined to hold that this was error as a matter of law, largely because we recognized that the post-conviction relief process can be ill-suited to the type of expeditious litigation that time accounting questions may require.[15]

As a general matter, however, we encourage trial courts to review motions for *Shetters* credit, such as the one filed in Howard's case, to determine (1) whether it is actually a motion for *Shetters* credit, rather than a mislabeled request for *Nygren* credit under AS 12.55.025(c) or AS 12.55.027; and (2) whether it makes sense, given the circumstances of the case, to convert the motion into an application for post-conviction relief under Criminal Rule 35.1 and to litigate the claim in that manner (on an expedited basis, as appropriate).

*Conclusion*

The judgment of the superior court is VACATED. We remand this case to the superior court for further proceedings on Howard's still unresolved claims for jail-time credit. We do not retain jurisdiction of this case.

---

[14] *Shetters*, 246 P.3d at 341-42.

[15] *Id.* (concluding that an application for post-conviction relief is generally the appropriate avenue to seek relief from Department of Corrections' time accounting errors but declining to rule that this is the only avenue of relief for such errors).

Judge MANNHEIMER, with whom Judge ANDREWS joins, concurring.

The present appeal is one of a recent series of appeals and petitions where a judge has issued a ruling based on a factual or legal theory that the parties did not raise, and that they did not litigate. [1] We wish to caution judges against this practice.

Every judge has assuredly had the experience of taking an issue under advisement and then perceiving that there is some facet of the case — an apparently significant or even dispositive aspect of the case — that the parties have not addressed.

As a society, we hope that judges will have the knowledge and the critical faculties to be able to analyze an issue beyond the specific arguments that the attorneys have presented to the court. And because a judge's role is to approach a case as a dispassionate arbiter, and not as the advocate of any party, there are indeed times when a judge will perceive some important aspect of the facts, or of the applicable law, that has seemingly escaped the attention of the attorneys.

But there are also times when the judge's "insight" is not an insight at all — times when the attorneys had good reason for not addressing the judge's concern, either because they knew that it was irrelevant (given the facts), or because they perceived that it was groundless (given the facts and the applicable law), or because they had a valid strategic reason for not litigating the issue that way.

---

[1] In addition to the present case, see *State v. Wasky*, File No. A-11896, where the judge granted a defense suppression motion based on a new, unlitigated theory — raised by the judge *sua sponte* — as to why the police interview with the defendant was improper; and *State v. Nicolai*, File No. A-11526, where the judge raised, *sua sponte*, an erroneous argument for the admissibility of hearsay under Evidence Rule 803(23), and then encouraged the defense attorney to formally seek admission of the hearsay under this erroneous theory. When the prosecutor in *Nicolai* objected to the hearsay and pointed out that the declarant would be available to testify in person if the hearing were delayed for a week or two, the judge replied that his calendar was "stuffed", and that he "[didn't] really have time ... for any [further] proceeding in [the] case."

In these situations, it is usually a mistake for the court to issue a ruling that both raises the issue and decides it *sua sponte*. This kind of judicial decision-making, done without the benefit of adversarial briefing and argument, provides "fertile conditions for the creation of judicial error." *State v. Angaiak*, 847 P.2d 1068, 1073 (Alaska App. 1993).

The best way for a judge to distinguish between a true insight and an illusory insight is to apprise the attorneys of the possible new approach to the issue, and then let the attorneys respond to the judge's proposed analysis.

It is true that our law allows a party to seek reconsideration of this type of *sua sponte* ruling. But as I noted in my concurring opinion in *State v. Waterman*:

> Once a judge has publicly announced a decision (especially in writing), it is often psychologically difficult for the judge to admit that he or she might have acted precipitously and might have reached the wrong conclusion. One would hope that a judge would always have the candor (at times, the courage) to concede that an earlier decision was wrong. But as a practical matter, a lawyer asking for reconsideration of a publicly announced decision faces an uphill battle. For this reason, a lawyer's right to seek rehearing or reconsideration of an announced decision is not a ready substitute for the right to litigate the issue *before* the court publicly announces its decision.

196 P.3d 1115, 1125 (Alaska App. 2008).

Leaving all of this aside, there is an additional reason why judges should seek the input of the parties before issuing a decision based on a point that was not raised or litigated.

One of the basic principles underlying our legal system is the guarantee of procedural fairness. Human beings are fallible, so we can not guarantee that the factual

premises of every judicial decision are ultimately accurate, or that the legal reasoning behind every judicial decision is ultimately sound. But to achieve these goals to the greatest extent possible, our legal system focuses on trying to guarantee that the *process* of reaching judicial decisions remains fair and open.

Generally speaking, this means that courts should not make binding decisions until everyone affected by that decision has received notice of what is at stake, has received notice of the factual and legal arguments raised by the opposing parties, and has been given a fair chance to argue their side of the controversy to the court.

In large measure, our judicial system is able to function because most people, whether they win or lose in court, come away from the judicial process knowing that the court has treated them with respect, that the court has carefully considered their claims, and that the court has tried, to the best of its ability, to reach its decision by faithfully applying the law to the facts of the case.

These values are potentially undermined when, after the parties have made their presentations to the court, a judge issues a decision based on factual or legal considerations that are different from those the parties raised. The judge's independent analysis of the issue may in fact be correct. But our legal system is damaged if one or more of the parties come away thinking that their arguments were ignored, or that they were denied a fair opportunity to respond to the judge's analysis.

For these reasons, we urge judges to notify the parties when they tentatively conclude that an issue should be decided on a factual or legal basis that was not previously raised or litigated. The judge should inform the parties of the factual and legal details of the judge's proposed analysis, and the judge should then allow the parties to brief or argue the issue before making a final ruling.